UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Walser Specialized Services, LLC,                    Civil No. 07-3957 (DWF/JJK)
a Minnesota limited liability company,

                    Plaintiff,
                                                           **MEMORANDUM**
v.                                                     **OPINION AND ORDER**

James J. Marcotte, a resident of the
State of Massachusetts, and Julie A.
Marcotte, a resident of the State of
Massachusetts,

                    Defendants.

---

Calvin R. Kuhlman, Esq., Kuhlman Law Office, counsel for Plaintiff.

Charles T. Hvass, Jr., Esq., Ingebritson & Associates, PA, counsel for Defendants.

---

# INTRODUCTION

This matter is before the Court on a Motion to Dismiss for Lack of Jurisdiction brought by Defendants James J. Marcotte and Julie A. Marcotte. In its Amended Complaint, Plaintiff Walser Specialized Services, LLC ("Walser") asserts that the Marcottes have breached certain personal guarantees by failing to pay amounts owed to Walser pursuant to oral and/or written agreements between Walser and Select Car Rental Inc. ("Select"), a company owned by Defendant Julie Marcotte. For the reasons set forth below, Defendants' motion is denied.

**BACKGROUND**

According to the Amended Complaint, Walser is a Minnesota limited liability company with its principal place of business in Hopkins, Minnesota. Defendants are husband and wife and reside in Massachusetts. Walser asserts that Julie Marcotte was, at all times relevant to this action, the sole owner and principal officer and director of Select. Walser contends that James Marcotte managed the day-to-day affairs of Select.

The Amended Complaint alleges that Walser and Select entered into a Loan and Security Agreement dated December 12, 2003, by which Walser agreed to lend money to Select to finance the purchase of motor vehicles for Select to use in the car rental business. (Am. Compl. ¶ 5; Ex. A.) Specifically, pursuant to this Loan and Security Agreement, Walser extended to Select a $2,000,000 revolving loan for the purchase and lease of vehicles for use in Select's business. (*Id*.) The Loan and Security Agreement listed Julie A. Marcotte and James J. Marcotte, collectively, as Guarantors. (*Id*. ¶ G.) Walser and Select also entered into a Rental Fleet Management Master Vehicle Lease Agreement on December 12, 2003. (*Id*. ¶ 6; Ex. B.) Pursuant to this Lease Agreement, Walser agreed to lease motor vehicles to Select that Select used in its car rental business. (*Id*.)

On December 19, 2003, Defendants signed a Personal Guaranty with Walser, naming the Defendants as Guarantors. (Am. Compl. ¶ 9, Ex. D.) The Personal Guaranty stated:

> In consideration of and in order to induce [Walser] (the "Lessor"), to extend financial accommodations to [Select] (the "Lessee"), pursuant to: (a) that certain Rental Fleet Management Master Vehicle Lease Agreement of even

2

> date herewith by and between the Lessee and the Lessor, and any and all
> existing and future Vehicle Endorsements delivered in connection therewith
> (the "Lease"), and (b) that certain Loan and Security Agreement of even
> date herewith by and between the Lessee, as borrower, and the Lessor, as
> lender, and any and all amendments thereto (the "Loan Agreement"), the
> undersigned (collectively, the "Guarantor") hereby:
>
> 1. Unconditionally and absolutely, jointly and severally, guarantees to Lessor:
>
>> a. the full and prompt payment, when due, whether at the date specified therein or theretofore upon acceleration of maturity pursuant to the provisions thereof, of rent, charges, late charges and prepayment premium, if any, under the Lease, any other advances made by the Lessor to or on behalf of the Lessee, including, but not limited to, advances made under the certain Master Note of even date herewith, executed by the Lessee and payable to the Lessor in the original principal amount of $500,000.00 (the "Note"), and any and all renewals thereof including notes taken in substitution therefor; and
>>
>> b. any and all other liability or indebtedness of the Lessee to the Lessor, whether now existing or hereafter arising, joint or joint and several, contingent or direct; and
>>
>> c. the payment and performance by the Lessee of all of its obligations under and pursuant to the Lease, the Loan Agreement, the Note, and any and all documents related thereto;
>
> (the Lease, the Loan Agreement, the Note, and such other liability, indebtedness and obligations herein collectively referred to as the "Obligations"), together with the full and prompt payment of any and all costs and expenses of and incidental to the collection of the Obligations or the enforcement of this Guaranty, including, without limitation, attorneys' fees.

(*Id.* at ¶ 1.) The Personal Guaranty also stated that the Guarantors "[a]gree[d] that this Guaranty shall be deemed a contract made under and pursuant to the laws of the State of Minnesota and shall be governed by and construed under the laws of such state." (*Id.* at

¶ 16.) Further, pursuant to the Personal Guaranty, each Guarantor:

> Irrevocably submits to the jurisdiction of any Minnesota state court or federal court over any action or proceeding arising out of or relating to the Lease, the Loan Agreement, the Note, and any instrument, agreement or document related thereto; agrees that all claims in respect of such action or proceeding may be heard and determined in such Minnesota state or federal court . . . .

(*Id*. at ¶ 24.)

It appears that the final documented agreement between Select and Walser occurred in October 2004. Specifically, the Amended Complaint alleges that Walser and Select entered into a Loan and Security Agreement and Master Vehicle Lease Agreement dated October 26, 2004, by which Walser further agreed to lend money to Select to finance the purchase of motor vehicles that Select used in its car rental business, and agreed to lease motor vehicles to Select for use in that business. (*Id*. ¶ 7; Ex. C.)

The Amended Complaint asserts that "[f]ollowing expiration or termination of [the three agreements], Walser continued to conduct business with Select by either (A) lending money to Select that was used by Select to finance the purchase of motor vehicles which Select used in its car rental business; and/or (B) leasing motor vehicles to Select which Select also used in its car rental business." (*Id*. ¶ 8.) The Amended Complaint contends that Select failed to pay amounts owed to Walser pursuant to the three agreements, "and/or under any oral or written agreement by and between Walser and Select following expiration or termination" of the three agreements. (*Id*. ¶ 13.) Thus, the Amended Complaint alleges that Defendants breached the Personal Guaranty

by failing to pay amounts due to Walser pursuant to the agreements and/or any oral or written agreement between Walser and Select. (*Id.* ¶¶ 15-16.)

## DISCUSSION

**I.    Standard of Review**

When a defendant challenges personal jurisdiction, the plaintiff has the burden to show that personal jurisdiction exists. *Burlington Indus., Inc. v. Maples Indus., Inc.*, 97 F.3d 1100, 1102 (8th Cir. 1996) (*citing Gould v. P.T. Krakatau Steel*, 957 F.2d 573, 575 (8th Cir. 1992)). To survive a motion to dismiss for lack of personal jurisdiction, however, the plaintiff need only make a *prima facie* showing of personal jurisdiction over the defendant. *Digi-Tel Holdings, Inc. v. Proteq Telecomms. (PTE), Ltd.,* 89 F.3d 519, 522 (8th Cir. 1996) (*citing Northrup King Co. v. Compania Productora Semillas Algodoneras Selectas, S.A.*, 51 F.3d 1383, 1387 (8th Cir. 1995)).

When considering whether personal jurisdiction exists, the court may consider matters outside the pleadings; "the court may inquire, by affidavits or otherwise, into the facts as they exist." *Stevens v. Redwing*, 146 F.3d 538, 543 (8th Cir. 1998) (*quoting Land v. Dollar*, 330 U.S. 731, 735 n.4 (1947)). For the purposes of determining whether the plaintiff has made a *prima facie* showing of personal jurisdiction, the court must view the evidence in the light most favorable to the plaintiff and resolve all factual conflicts in the plaintiff's favor. *Digi-Tel*, 89 F.3d at 522 (*citing Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1387 (8th Cir. 1991)). Each defendant's contacts with the forum state must be assessed individually. *See, e.g., Minn. Mining & Mfg. Co. v. Rauh Rubber, Inc.*, 943 F. Supp. 1117, 1122 (D. Minn. 1996).

In determining whether a court has personal jurisdiction over a non-resident defendant, a court must ordinarily satisfy both the requirements of the state long-arm statute and of federal due process. *Id.* (*citing Northrup King*, 51 F.3d at 1387). The Minnesota long-arm statute extends jurisdiction to the maximum limit consistent with due process, and therefore a court in Minnesota need only evaluate whether the requirements of due process are satisfied. *Wessels, Arnold & Henderson v. Nat'l Med. Waste, Inc.*, 65 F.3d 1427, 1431 (8th Cir. 1995).

Federal due process requires that a defendant have "certain minimum contacts" with the forum state such that "maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945) (internal quotations omitted). The defendant's conduct and connection with the forum state must be such that the defendant should reasonably anticipate being haled into court there. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). It is essential in each case that the defendant has purposefully availed itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (*quoting Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

A court may use one of two different analyses to determine whether a defendant's contacts with the forum state establish personal jurisdiction. *Epps v. Stewart Info. Servs. Corp.*, 327 F.3d 642, 648 (8th Cir. 2003). In a general jurisdiction case, a defendant maintains such "continuous and systematic" contacts with a state that it becomes subject to the jurisdiction of that state's courts for any purpose. *Morris v. Barkbuster, Inc.*, 923

6

F.2d 1277, 1281 (8th Cir. 1991) (*quoting Helicopteros Nacionales de Columbia v. Hall*, 466 U.S. 408, 414 n.9 (1984)). Specific jurisdiction, on the other hand, requires that the defendant has "purposely directed" its activities at residents of the forum and that the litigation results from alleged injuries that "arise out of or relate to" those activities. *Wessels*, 65 F.3d at 1432 (*quoting Burger King*, 471 U.S. at 472).

Regardless of which analysis is used, the Eighth Circuit applies a five-factor test in determining whether the exercise of personal jurisdiction would pass constitutional muster: (1) the nature and quality of defendant's contacts with the forum state; (2) the quantity of contacts; (3) the source and connection of the cause of action with those contacts; and, to a lesser degree, (4) the interest of the forum state; and (5) the convenience of the parties. *Wessels*, 65 F.3d at 1432. The first three factors are of primary importance, while the last two are "secondary factors." *Minn. Mining & Mfg. Co. v. Nippon Carbide Indus. Co.*, 63 F.3d 694, 697 (8th Cir. 1995). The third factor distinguishes between specific and general jurisdiction. *Digi-Tel*, 89 F.3d at 523 n.4 (*citing Wessels*, 65 F.3d at 1432 n.4).

Defendants contend that no personal jurisdiction exists here because jurisdiction in this Court derived from the forum selection clause in the Personal Guaranty, which allegedly expired when the 2003 Lease Agreement and Loan and Security Agreements were purportedly satisfied. Specifically, Defendants point to the language in paragraph 7 of the Personal Guaranty, which states that each Guarantor "[a]grees that this Guaranty shall remain in full force and effect and be binding upon the Guarantor until the Obligations are paid in full." (Am. Compl. ¶ 9, Ex. D. at ¶ 7.) "Obligations" are defined

7

in paragraph 1 of the Personal Guaranty as "the Lease, the Loan Agreement, the Note, and such other liability, indebtedness and obligations herein collectively referred to . . . ." (*Id.* ¶ 1.) Defendants contend that once the 2003 and 2004 obligations were paid in full, the Guaranty expired along with the jurisdiction conferred by the Guaranty. Thus, Defendants assert that there is no remaining basis for personal jurisdiction against them. Defendants further contend that Walser has made a judicial admission of the satisfaction of the 2003 and 2004 obligations via paragraph 8 of the Amended Complaint:

> Following expiration or termination of the Walser Loan Agreement, the Walser Lease Agreement and/or the Walser Loan and Security and Lease Agreement, Walser continued to conduct business with Select by either (A) lending money to Select that was used by Select to finance the purchase of motor vehicles which Select used in its car rental business; and/or (B) leasing motor vehicles to Select which Select also used in its car rental business.

(Am. Compl. ¶ 8.) Further, Defendants assert that they repudiated any personal guarantees in 2005 when James Marcotte crossed out the guarantees and faxed them to Walser. Walser denies that such events occurred.[1]

Walser contends that Select has conducted business with Walser since at least 2003, during which time Walser, a Minnesota resident, funded over $19 million dollars in motor vehicles for the benefit of Select. Walser asserts that Select regularly and

---

[1] Defendants also assert that Walser is estopped from raising the issue of the validity of the Select/Walser agreements based on a finding in Select's bankruptcy proceeding in the United States Bankruptcy Court for the Eastern District of Massachusetts. In support of this contention, Defendants rely on a statement made by the bankruptcy court in response to Walser's motion for relief from the automatic stay in the Select bankruptcy. Specifically, Defendants contend that the bankruptcy court's statement regarding the interpretation of the financing arrangements between Select and Walser is somehow binding on this Court's interpretation of the Personal Guaranty as to the Defendants and Walser. The Court finds no merit to this assertion.

8

systematically conducted business with Walser through a four-year period.  Walser contends that James Marcotte regularly called Walser at Walser's Minnesota offices to discuss issues regarding the parties' business relationship.  In addition, Walser asserts that this lawsuit has arisen out of systematic contacts that one or both of the Defendants had with Walser, and, without these contacts, there would be no lawsuit.

The Court finds that Walser has met its burden of establishing a *prima facie* showing of personal jurisdiction.  Even if the Court were to determine that the Personal Guaranty had expired, the Court finds that Defendants' contacts with Minnesota are of a sufficient nature, quality, and quantity to confer specific personal jurisdiction.  Walser alleges a long-standing business relationship with Defendants that involved millions of dollars.  Defendants' contacts with Minnesota were clearly contemplated and not incidental.  The Defendants purposely directed their activities at Walser, a Minnesota resident, when they signed the three agreements in 2003 and 2004.  Moreover, Walser has sufficiently alleged that other verbal agreements occurred between the parties that involved activities contemplated to be and actually conducted with Walser.  Walser's alleged injuries arose specifically out of these various agreements.  For these reasons, Defendants' Motion to Dismiss is denied.

Accordingly, **IT IS HEREBY ORDERED THAT**:

1.  Defendants' Motion to Dismiss for Lack of Jurisdiction (Doc. No. 19) is **DENIED**.

Dated:  July 10, 2009     s/Donovan W. Frank
DONOVAN W. FRANK
United States District Court Judge